# United States District Court

## FOR THE
## NORTHERN DISTRICT OF CALIFORNIA

VENUE: SAN ~~FRANCISCO~~ *Jose*



FILED

DEC 1 7 2009

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

---

UNITED STATES OF AMERICA,

V.

# CR09 1195 JF

## RODNEY HATFIELD and
## LLOYD MYERS,

SEALED BY ORDER OF COURT

RS

DEFENDANT(S).

---

# INDICTMENT

VIOLATIONS: 18 U.S.C. § 1349 (Conspiracy to Commit Wire
Fraud); 18 U.S.C. § 1343 (Wire Fraud); 18 U.S.C. § 981(a)(1)(C)
(Criminal Forfeiture); 18 U.S.C. § 982(a)(2) (Criminal Forfeiture); 28
U.S.C. § 2461(c) (Criminal Forfeiture); 21 U.S.C. § 853(p)(1), (a)(2)
(Criminal Forfeiture)

---

A true bill.

_____ Foreman

Filed in open court this __17__ day of

__December, 2009__

_____
JOSEPH C. SPERO
UNITED STATES MAGISTRATE JUDGE

KAREN L. HOM
Clerk

Bail, $ __no__

*no bail arrest warrants for both defendants*

DOCUMENT NO.       CSA's INITIALS

1

DISTRICT COURT
CRIMINAL CASE PROCESSING

W1

JOSEPH P. RUSSONIELLO (CSBN 44332)
United States Attorney

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| UNITED STATES OF AMERICA, | ) | No. CR |
|---|---|---|
| Plaintiff, | ) | VIOLATIONS: |
| v. | ) | 18 U.S.C. § 1349 (Conspiracy to Commit Wire Fraud); 18 U.S.C. § 1343 (Wire Fraud); 18 U.S.C. § 981(a)(1)(C) (Criminal Forfeiture); 18 U.S.C. § 982(a)(2) (Criminal Forfeiture); 28 U.S.C. § 2461(c) (Criminal Forfeiture); 21 U.S.C. § 853(p)(1), (a)(2) (Criminal Forfeiture) |
| RODNEY HATFIELD and LLOYD MYERS, | ) | |
| Defendants. | ) | |

SAN JOSE VENUE

INDICTMENT

The Grand Jury charges:

Relevant Individuals and Entities

1.     At all relevant times, Landmark Trading Company, LLC ("Landmark") was a California limited liability company registered with the California Secretary of State on or about October 14, 2003.

2.     At all relevant times, RODNEY HATFIELD was a "Managing Member" and "Manager" of Landmark Trading Company, LLC ("Landmark") and resided in or near

INDICTMENT                          1

1    Watsonville, California.

2        3.    At all relevant times, LLOYD MYERS was a "Managing Member" and

3    "Manager" of Landmark and resided in or near Rio Linda, California.

4        4.    RODNEY HATFIELD and LLOYD MYERS organized Landmark for the stated

5    purpose of offering an "ownership interest" in Landmark and using the proceeds generated from

6    investors to engage in trading on the foreign currency exchange markets.

7        5.    At all relevant times, Comerica Bank ("Comerica") was a financial institution

8    engaged in interstate commerce in the Northern District of California and elsewhere.  Landmark

9    maintained an account at Comerica.

10        6.    At all relevant times, Xpresstrade LLC ("Xpresstrade") was an online

11    commodities brokerage trading service engaged in interstate commerce in the Northern District

12    of California and elsewhere.  Landmark maintained an account at Xpresstrade.

13        7.    RODNEY HATFIELD and LLOYD MYERS owed fiduciary, agency and other

14    legal, statutory and contractual duties of trust, loyalty, confidence, and full disclosure to

15    Landmark investors.

16                    The Business of Landmark

17        8.    Landmark classified each of its investors as a "Member."

18        9.    RODNEY HATFIELD and LLOYD MYERS took investors' money with the

19    promise of pooling the funds into a common trading account under the name and for the benefit

20    of Landmark and its constituent members.  A Member's individual ownership interest in

21    Landmark was purportedly based on the amount he or she invested, as a percentage of the total

22    funds invested in Landmark by all investors.  RODNEY HATFIELD and LLOYD MYERS

23    advised investors that they would receive profits from the trading gains of the Landmark account,

24    on a pro rata basis.

25        10.    RODNEY HATFIELD and LLOYD MYERS generated a standard document that

26    they provided to investors at the time of the investors' initial and subsequent investments in

27    Landmark, entitled "Landmark Trading Company LLC Member Agreement" ("the Agreement").

28

INDICTMENT                    2

11.     The Agreement promised investors, among other things, that Landmark "actively trades foreign currency thru [sic] the FOREX CURRENCY exchange. Foreign currency is a high risk investment. All members of Landmark realize that due to the high risk of the trading in foreign currency it is possible to loose [sic] some of the investment in Landmark Trading Company LLC." The Agreement also provided, among other things, that Landmark would "on a monthly basis report to the members the activities of the LLC," that the "Members at anytime shall have the right to liquidate their percentage in the LLC by notification in writing of that selection and the LLC shall return the current percentage of the LLC to the Member within 10 working days from receipt of said selection," that the "Managing Members will comply with all State and Federal regulations and each member is added to the LLC report to the State of California," and that "each member shall receive a 1099 report as to income from their LLC."

12.     RODNEY HATFIELD and LLOYD MYERS electronically transmitted to investors periodic account statements purporting to reflect recent trading performance as well as the overall value of the Member's investment in Landmark, based on the original investment principal plus the purported gains from trading.

<u>The Scheme to Defraud</u>

13.     Beginning on or about October 2003 and continuing through at least on or about December 23, 2008, RODNEY HATFIELD and LLOYD MYERS knowingly devised a material scheme and artifice to defraud investors, and to obtain money and property by means of false and fraudulent pretenses, representations and promises.

14.     RODNEY HATFIELD and LLOYD MYERS obtained a total of approximately $5 million from investors for the stated purpose of trading in foreign currency.

15.     In the process, RODNEY HATFIELD and LLOYD MYERS made false statements about Landmark's trading history and performance, failed to invest those funds as promised, failed to report Landmark's trading losses, and converted in excess of approximately half a million dollars of the investors' funds for their own personal benefit.

16.     Through written and oral communications, RODNEY HATFIELD and LLOYD MYERS created the false and misleading appearance that Landmark was successfully engaging

INDICTMENT                                    3

in trading on the foreign currency exchange market, generating regular, net positive monthly returns and increasing the overall value of each Member's investment in Landmark. In truth, as RODNEY HATFIELD and LLOYD MYERS knew, Landmark had suffered significant losses in its foreign currency exchange trades at Xpresstrade and the value of the Members' investors had, in fact, declined.

17.   Specifically, or about July 2005, RODNEY HATFIELD individually advised Members of their respective balances in Landmark, representations that collectively totaled approximately $1,242,000; in reality, RODNEY HATFIELD and LLOYD MYERS had access to no more than approximately $538,515. This same pattern continued for the next eighteen months, as follows:

| Approximate Date | Purported Approximate Value Reported on All Landmark Accounts | True Approximate Value of All Landmark Accounts |
| --- | --- | --- |
| December 2005 | $2,040,000.00 | $592,211.00 |
| March 2006 | $1,943,000.00 | $141,792.00 |
| July 2006 | $1,685,000.00 | $167,916.00 |
| December 2006 | $2,029,123.00 | $53,210.00 |
| February 2007 | $2,106,000.00 | $115,097.00 |

18.   It was a part of the scheme to defraud that, among other conduct, RODNEY HATFIELD and LLOYD MYERS:

(A) deceived investors by sending to them, by electronic mail, account statements, which lulled investors into a false sense of security by creating the appearance that Landmark was engaging in successful currency trading and otherwise acting to preserve and increase the Members' investment monies, when in truth, as RODNEY HATFIELD and LLOYD MYERS knew, Landmark had consistently negative returns in its trading account with Xpresstrade and the overall value of the Members' investments had declined, and continued to decline, significantly;

(B) deceived investors by promising to obtain permission to invest Members' funds in real estate, when in truth, as RODNEY HATFIELD and LLOYD MYERS knew, Landmark diverted hundreds of thousands of dollars of Members' investment funds to real estate

INDICTMENT                                        4

1  ventures controlled by RODNEY HATFIELD and LLOYD MYERS without notice to, or

2  authorization from, Landmark investors;

3      (C) misrepresented to Landmark investors that only a small portion of the

4  Members' investment funds would be engaged in active foreign currency exchange trading and

5  that the vast majority of funds would remain in a bank account for the benefit of Landmark, when

6  in truth, as RODNEY HATFIELD and LLOYD MYERS knew, Landmark traded substantially

7  greater amounts through its Xpresstrade account than it had promised its Members;

8      (D) misrepresented to Landmark investors that Landmark had retained the

9  services of experienced foreign currency exchange traders, when in truth, as RODNEY

10 HATFIELD and LLOYD MYERS knew, Landmark never retained the services of any trader to

11 assist RODNEY HATFIELD and LLOYD MYERS in Landmark's trading activities; and,

12     (E) misrepresented to investors that their money would be invested only in

13 Landmark's bank accounts and in its foreign currency trading account, when in truth, as

14 RODNEY HATFIELD and LLOYD MYERS knew, the defendants had improperly diverted

15 investor funds for their personal use, including speculative real estate schemes.

16     19.    As of on or about December 23, 2008, as a result of their fraudulent scheme,

17 RODNEY HATFIELD and LLOYD MYERS had suffered approximately $1 million in

18 unreported trading losses and diverted in excess of approximately half a million dollars to their

19 personal benefit in order to buy real estate and automobiles and to pay personal expenses.

20

21 COUNT ONE:    18 U.S.C. § 1349 (Conspiracy to Commit Wire Fraud)

22     20.    Paragraphs 1 through 19 are realleged as if fully set forth herein.

23     21.    From on or about October 2003 through on or about December 23, 2008, in the

24 Northern District of California and elsewhere, the defendants,

25                  RODNEY HATFIELD
                         and

26                  LLOYD MYERS,

27 did knowingly and intentionally attempt and conspire with other persons known and unknown to

28 the grand jury to commit an offense against the United States, to wit, wire fraud, in violation of

INDICTMENT                5

1  Title 18, United States Code, Section 1343.

2  Object of the Conspiracy

3      22.    It was a part and object of the conspiracy that RODNEY HATFIELD

4  and LLOYD MYERS, having devised and intending to devise a material scheme and artifice to

5  defraud, and for obtaining money and property by means of materially false or fraudulent

6  pretenses, representations, and promises, transmitted and caused to be transmitted by means of

7  wire, radio, and television communication in interstate or foreign commerce, writings, signs,

8  signals, pictures, and sounds for the purpose of executing such scheme or artifice, in violation of

9  Title 18, United States Code, Section 1343.

10  Overt Acts of the Conspiracy

11      23.    In furtherance of the conspiracy and to effect the illegal object thereof,

12  RODNEY HATFIELD and LLOYD MYERS committed and caused others to commit the

13  following overt acts, among others, in the Northern District of California and elsewhere:

14      (A)    On or about March 8, 2005, caused an interstate wire transfer of $15,000

15  to be made from Landmark's Comerica Account Number ending in 5681 to RODNEY

16  HATFIELD's Comerica Account Number ending in 6382;

17      (B)    On or about May 6, 2005, caused an interstate wire transfer of $15,000 to

18  be made from Landmark's Comerica Account Number ending in 5681 to RODNEY

19  HATFIELD's Comerica Account Number ending in 6382;

20      (C)    On or about May 6, 2005, caused a cash withdrawal payable to RODNEY

21  HATFIELD in the amount of $25,000 to be made from Landmark's Comerica Account Number

22  ending in 5681;

23      (D)    On or about July 18, 2005, caused a cash withdrawal payable to RODNEY

24  HATFIELD in the amount of $17,000 to be made from Landmark's Comerica Account Number

25  ending in 5681;

26      (E)    On or about July 19, 2005, caused a cash withdrawal payable to RODNEY

27  HATFIELD in the amount of $10,000 to be made from Landmark's Comerica Account Number

28  ending in 5681;

1          (F)     On or about July 21, 2005, caused a cash withdrawal payable to RODNEY

2 HATFIELD in the amount of $10,000 to be made from Landmark's Comerica Account Number

3 ending in 5681;

4          (G)     On or about October 31, 2005, caused a cash withdrawal payable to

5 RODNEY HATFIELD in the amount of $100,000 to be made from Landmark's Comerica

6 Account Number ending in 5681;

7          (H)     On or about November 7, 2005, caused an interstate wire communication

8 to be transmitted to e-mail account for Investor A, containing Investor A account statement;

9          (I)     On or about November 22, 2005, caused an interstate wire transfer of

10 $224,985.00 to be made from Landmark's Comerica Account Number ending in 5681 to

11 RODNEY HATFIELD's Comerica Account Number ending in 6382;

12          (J)     On or about January 3, 2006, caused an interstate wire communication

13 to be transmitted to e-mail account for Investor A, containing Investor A account statement;

14          (K)     On or about January 24, 2006, caused an interstate wire transfer of

15 $30,000.00 to be made from Landmark's Comerica Account Number ending in 5681 to

16 RODNEY HATFIELD's Comerica Account Number ending in 6382;

17          (L)     On or about January 30, 2006, caused an interstate wire transfer of

18 $50,000.00 to be made from Landmark's Comerica Account Number ending in 5681 to

19 RODNEY HATFIELD's Comerica Account Number ending in 6382;

20          (M)     On or about February 13, 2006, caused an interstate wire transfer of

21 $60,000.00 to be made from Landmark's Comerica Account Number ending in 5681 to

22 RODNEY HATFIELD's Comerica Account Number ending in 6382;

23          (N)     On or about March 16, 2006, caused an interstate wire transfer of

24 $20,000.00 to be made from Landmark's Comerica Account Number ending in 5681 to

25 RODNEY HATFIELD's Comerica Account Number ending in 6382;

26          (O)     On or about August 15, 2006, caused an interstate wire communication to

27 be transmitted to e-mail account for Investor B, containing Investor B account statement;

28          (P)     On or about August 16, 2006, caused an interstate wire transfer of

$24,985.00 to be made from Landmark's Comerica Account Number ending in 5681 to

RODNEY HATFIELD's Comerica Account Number ending in 6382;

        (Q)    On or about November 9, 2006, caused an interstate wire communication to be transmitted to e-mail account for Investor B, containing Investor B account statement;

        (R)    On or about December 9, 2006, caused an interstate wire communication to be transmitted to e-mail account for Investor A, containing Investor A account statement;

        (S)    On or about December 22, 2006, caused an interstate wire communication to be transmitted to e-mail account for Investor B, containing Investor B account statement;

        (T)    On or about January 16, 2007, caused an interstate wire communication to be transmitted to e-mail account for Investor A, containing Investor A account statement;

        (U)    On or about January 17, 2007, caused an interstate wire communication to be transmitted to e-mail account for Investor A, containing information relative to Investor A account;

        (V)    On or about February 16, 2007, caused an interstate wire communication to be transmitted to e-mail account for Investor A, containing Investor A account statement; and,

        (W)    On or about February 21, 2007, caused an interstate wire communication to be transmitted to e-mail account for Investor C, containing account information.

        All in violation of Title 18, United States Code, Section 1349.


COUNTS TWO THROUGH TEN:  18 U.S.C. § 1343 (Wire Fraud)

        24.    The factual allegations of paragraphs 1 through 23 are realleged as if fully set forth herein.

        25.    On or about the dates set forth below, in the Northern District of California and elsewhere, the defendants,

RODNEY HATFIELD
and
LLOYD MYERS

and others known and unknown to the grand jury, having devised and intending to devise a material scheme and artifice to defraud, and for obtaining money and property by means of

materially false or fraudulent pretenses, representations, and promises, transmitted and caused to

be transmitted by means of wire, radio, and television communication in interstate or foreign

commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such

scheme or artifice, in violation of Title 18, United States Code, Section 1343, to wit:

| Count | Wire Date | Description |
|-------|-----------|-------------|
| Two | November 7, 2005 | interstate wire communication to e-mail account for Investor A, containing Investor A account statement |
| Three | January 3, 2006 | interstate wire communication to e-mail account for Investor A, containing Investor A account statement |
| Four | August 15, 2006 | interstate wire communication to e-mail account for Investor B, containing Investor B account statement |
| Five | November 9, 2006 | interstate wire communication to e-mail account for Investor B, containing Investor B account statement |
| Six | December 9, 2006 | interstate wire communication to e-mail account for Investor A, containing Investor A account statement |
| Seven | December 22, 2006 | interstate wire communication to e-mail account for Investor B, containing Investor B account statement |
| Eight | January 16, 2007 | interstate wire communication to e-mail account for Investor A, containing Investor A account statement |
| Nine | January 17, 2007 | interstate wire communication to e-mail account for Investor A, containing information relative to Investor A account |
| Ten | February 21, 2007 | interstate wire communication to e-mail account for Investor C, containing account information |

All in violation of Title 18, United States Code, Section 1343.

////
////
////
////
////
////
////

INDICTMENT                                        9

FORFEITURE ALLEGATION:    18 U.S.C. §§ 981(a)(1)(C), 982 (a)(2) and 28
U.S.C. § 2461(c) (Criminal Forfeiture)

26.    The allegations of Counts One through Ten of this Indictment are realleged and by this reference fully incorporated herein for the purpose of alleging forfeiture pursuant to the provisions of 18 U.S.C. §§ 981(a)(1)(C), 982(a)(2) and 28 U.S.C. § 2461(c).

27.    Upon a conviction of any of the offenses alleged in Counts One through Ten, the defendants,

RODNEY HATFIELD
and
LLOYD MYERS,

shall forfeit to the United States all property, constituting and derived from proceeds traceable to said offenses.

SUBSTITUTE ASSETS

28.    If, as a result of any act or omission of the defendants, any of the property described in the above Forfeiture Allegation

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to or deposited with, a third person;

    c.    has been placed beyond the jurisdiction of the Court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be divided without
           difficulty;

any and all interest defendants have in any other property, up to value of the property described above, shall be forfeited to the United States pursuant to 21 U.S.C. § 853(p), as incorporated by

////

////

////

////

////

////

INDICTMENT                10

1    18 U.S.C. §§ 982(b)(1) and 28 U.S.C. § 2461(c).

2

3    DATED:                                    A TRUE BILL.

4        December 17, 2009          Lynda Benjamin

5                                              _____
                                              FOREPERSON
6

7    JOSEPH P. RUSSONIELLO
     United States Attorney
8

9

10

     BRIAN J. STRETCH
11   Chief, Criminal Division

12   (Approved as to form:
                       AUSA Timothy J. Lucey
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

     INDICTMENT                        11

AO 257 (Rev. 6/78)

| **DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT** |
|---|

BY: ☐ COMPLAINT   ☐ INFORMATION   ☒ INDICTMENT

☐ SUPERSEDING

---

**OFFENSE CHARGED**

VIOLATION:
Count 1: Title 18 USC, Section 1349 - Conspiracy to Commit Wire Fraud
Counts 2-10: Title 18 USC, Section 1343 - Wire Fraud

☐ Petty
☐ Minor
☐ Misde-meanor
☒ Felony

PENALTY:   Up to 20 years imprisonment; Fine $250,000;  Supervised Release up to 3 years and $100 Special Assessment

*E-filing*

---

Name of District Court, and/or Judge/Magistrate Location

NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

SEALED BY ORDER OF COURT

FILED
DEC 17 2009

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

DEFENDANT - U.S.

▶ RODNEY HATFIELD

DISTRICT COURT NUMBER

CR 09   1195   JF

---

**DEFENDANT**   RS

**IS *NOT* IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior summons was served on above charges ▶

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**

4) ☐ On this charge

5) ☐ On another conviction         ☐ Federal   ☐ State

6) ☐ Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution

Has detainer been filed?   ☐ Yes   ☐ No   If "Yes" give date filed

**DATE OF ARREST**   Month/Day/Year

Or... if Arresting Agency & Warrant were not

**DATE TRANSFERRED TO U.S. CUSTODY** ▶   Month/Day/Year

☐ This report amends AO 257 previously submitted

---

**PROCEEDING**

Name of Complaintant Agency, or Person (& Title, if any)

United States Postal Inspector Services

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40.  Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
☐ U.S. ATTORNEY   ☐ DEFENSE

SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant

MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

Name and Office of Person Furnishing Information on this form   JOSEPH P. RUSSONIELLO

☒ U.S. Attorney   ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)   TIMOTHY J. LUCEY

---

**ADDITIONAL INFORMATION OR COMMENTS**

PROCESS:
☐ SUMMONS   ☒ NO PROCESS*   ☐ WARRANT

If Summons, complete following:
☐ Arraignment   ☐ Initial Appearance

Defendant Address:

Bail Amount:

\* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time:                Before Judge:

Comments:

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT  ☐ INFORMATION  ☒ INDICTMENT
☐ SUPERSEDING

*SEALED & FILED OF COURT*

— **OFFENSE CHARGED** —

VIOLATION:
Count 1: Title 18 USC, Section 1349 - Conspiracy to Commit Wire Fraud
Counts 2-10: Title 18 USC, Section 1343 - Wire Fraud

☐ Petty
☐ Minor
☐ Misde-meanor
☒ Felony

PENALTY: Up to 20 years imprisonment; Fine $250,000; Supervised Release up to 3 years and $100 Special Assessment.

*E-Filing*

Name of District Court, and/or Judge/Magistrate Location
**NORTHERN DISTRICT OF CALIFORNIA**
SAN FRANCISCO DIVISION

*FILED*
*DEC 1 7 2009*
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

— **DEFENDANT - U.S** —

▶ LLOYD MYERS

DISTRICT COURT NUMBER

**CR09  1195  JF**

— **PROCEEDING** —

Name of Complainant Agency, or Person (& Title, if any)

United States Postal Inspector Services

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
   ☐ U.S. ATTORNEY  ☐ DEFENSE      } SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant      } MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under }

Name and Office of Person Furnishing Information on this form   JOSEPH P. RUSSONIELLO

☒ U.S. Attorney  ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)   TIMOTHY J. LUCEY

— **DEFENDANT**  **RS** —

**IS *NOT* IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior summons was served on above charges ▶

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**
4) ☐ On this charge

5) ☐ On another conviction        ☐ Federal  ☐ State

6) ☐ Awaiting trial on other charges
   If answer to (6) is "Yes", show name of institution

Has detainer been filed?  ☐ Yes  ☐ No      } If "Yes" give date filed

DATE OF ARREST ▶         Month/Day/Year

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED TO U.S. CUSTODY ▶     Month/Day/Year

☐ This report amends AO 257 previously submitted

— **ADDITIONAL INFORMATION OR COMMENTS** —

PROCESS:
☐ SUMMONS  ☒ NO PROCESS*  ☐ WARRANT      Bail Amount:

If Summons, complete following:
☐ Arraignment  ☐ Initial Appearance

Defendant Address:

* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time:          Before Judge:

Comments: